## Somerset Colliery Company, Appellant, *v.* John.

*Set-off—Mortgage—Damages—Evidence—Case for jury.*

Where an owner of coal grants it under a usual mining lease to another, and the lessee as a part of the consideration agrees to make certain improvements costing an amount specified, or to pay the amount to the lessor, but the improvement is not made, and the amount stipulated is not paid, and subsequently the lessor repurchases the coal from the lessee for an amount stated, giving a mortgage for a portion of the purchase money, the lessor in an action on the mortgage may show as a set-off that at the time the mortgage was given it was agreed the amount stipulated should be set off on the deferred payment; but if such testimony is contradicted directly and circumstances are shown which tend to establish its improbability, the case is for the jury, and it is reversible error for the trial judge to peremptorily direct that the jury should allow the set-off.

Argued Jan. 17, 1910. Appeal, No. 17, Oct. T., 1910, by plaintiff, from judgment of C. P. Somerset Co., Feb. T., 1905, No. 18, on verdict for plaintiff in case of Somerset Colliery Company v. A. F. John. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Reversed.

Scire facias sur mortgage. Before INGHRAM, P. J., specially presiding.

The facts are stated in the opinion of the Supreme Court.

The plaintiff presented these points:

2. The testimony shows certain mine improvements placed by the Somerset Colliery Company on the Somerset Coal Company's premises, viz.: A secondhand boiler, a large new boiler, a carload of bricks; and these items are partial fulfillment of the $8,000 air mining plant or other mine improvements called for in the supplemental agreement. Said agreement provides that the obligors shall be liable only for any deficit that the costs of said improvements may fall short of said $8,000. This deficit is an unliquidated sum, and cannot be maintained as a set-off against the mortgage in suit, in the absence of agreement to that effect. *Answer:* Refused. [2]

3. The proper construction of the mining lease agreement, the supplemental agreement of even date, and the postscript thereto, is that the "one year additional" mentioned in the postscript means one year additional to the last date upon which all the minimum royalties were fully paid. *Answer:* Refused. [3]

4. The minimum amount of coal having been mined and paid for up until December 31, 1902, and the minimum royalty having been fully paid up until September 21, 1903, the date of the mortgage in suit, there was no default by the plaintiff in the erection of an air mining plant or other mine improvements, and the defendant may not set off his claim for $8,000, nor any part of it, against the mortgage debt. *Answer:* Refused. [4]

5. The defendant having been the owner and lessor of the mines to the plaintiff, and the person for whose benefit the $8,000 provision in the supplemental agreement of August 28, 1901, was made, and defendant having been the repurchaser of the leasehold interest created by him containing said $8,000 provision, the said leasehold with its said provision was extinguished, merged in the fee, and he can maintain no claim against the plaintiff under said provision. *Answer:* Refused. [5]

6. The defendant took back the property in the condition

it was, without the air mining plant, at an agreed price; and against said price can maintain no claim for set-off because the property was not in a different condition. *Answer:* Refused. [6]

7. Since the property was repurchased by the defendant in the condition it was, for $70,000, he cannot maintain a defense against payment of the purchase money on the ground that the property was not enhanced in value by the erection of an air mining plant or other mine improvement. *Answer:* Refused. [7]

8. None of the defendant's evidence offered in this case is admissible, and all must be rejected, because any obligation or liability of the Somerset Colliery Company is only undertaken to be shown under contracts and negotiations appearing by said evidence to have been merged into, superseded and closed by the repurchase of the premises by the defendant, A. F. John, and by the execution of the bond and mortgage in suit; and because said evidence tends to vary, alter and contradict the terms of said bond and mortgage declaring the debt at a sum certain; and because it is not averred in the pleadings that the defendant signed said mortgage and bond upon the inducement that the said set-offs would be allowed him. *Answer:* Refused. [8]

9. The verdict cannot be less than the amount of the tender, to wit: $9,136.16. *Answer:* Refused. [9]

Under all the evidence in the case, the verdict must be for the plaintiff for the full amount of its claim. *Answer:* Refused. [10]

Verdict and judgment for plaintiff for $11,524.02. Plaintiff appealed.

*Errors assigned* amongst others were (2–10) above instructions, quoting them; and (14) in directing the jury to allow the defendant $8,000 as a set-off.

*Ernest O. Kooser* and *Henry S. Drinker, Jr.*, with them *H. Gordon McCouch* and *L. C. Colborn*, for appellant.—The presumption of law is, that the acceptance of a deed in pursuance

of articles, is satisfaction of all previous covenants: Seitzinger v. Weaver, 1 Rawle, 377; Wilson v. McNeal, 10 Watts, 422; Madore's App., 129 Pa. 15.

The plaintiff had the right to assume the defendant was not claiming this $8,000 because he made no claim: Sinclair v. Tallmadge, 35 Barb. (N. Y.) 602; Gallagher v. Nichols, 60 N. Y. 438.

*W. H. Ruppel*, with him *W. H. Koontz* and *J. G. Ogle*, for appellee.

OPINION BY MR. JUSTICE BROWN, February 14, 1910:

On August 28, 1901, A. F. John, the appellee, the owner of certain coal lands in Somerset county, granted mining rights in the same to John A. Clark and William A. Somerville. By a supplemental agreement executed on the same day the lessees agreed, as a further consideration for acquiring said rights, that within one year from date they would erect upon the premises an air mining plant or other mining improvements to cost at least $8,000, and, upon failure to do so, would be liable to the lessor "to the amount of a like sum or of any deficit that the cost of said mine improvements may fall short of said sum." Subsequently Clark and Somerville assigned their mining interests to the Somerset Colliery Company, the present appellant, which, under the agreement of August 28, 1901, assumed all of their covenants. They were both members of that company, Clark being its president. The air mining plant stipulated for by the lessees was not erected, but the appellant submitted evidence showing that two boilers and a carload of bricks had been placed on the premises in partial fulfillment of the stipulation. On August 29, 1903, Clark gave to the appellee an option, running until the fifteenth of the next month, to purchase all the holdings of the Somerset Colliery Company, including the mining rights and property which he had previously conveyed to Clark and Somerville, the price for the same to be $70,000, payable as follows: $35,000 cash on or before October 1, 1903, and the balance in two equal payments in six and twelve months, to be secured by a mortgage.

John availed himself of his right to purchase the property, paying $35,000 in cash and executing a mortgage for the two deferred payments of $17,500 each. After the second installment became due a scire facias was issued to enforce its payment, and on the trial an offer was made by the defendant to prove the failure of the lessees or their successors to erect the mining plant in accordance with the supplemental agreement of August 28, 1901, and that at the time the mortgage was given it was agreed between the mortgagor and the mortgagee that the question of the payment of the $8,000 should be adjusted when the payments of the mortgage fell due. This offer was objected to and excluded by the court on the ground that the proposed oral testimony of an agreement as to the adjustment of the claim for $8,000 would contradict or change the terms of the mortgage upon which the plaintiff relied. Judgment having been entered for the plaintiff on the verdict for the full amount of its claim, on appeal to this court it was reversed, for the reason that the court below had misapplied the rule as to contradicting or changing a written instrument by parole, and that as mortgages were not excepted out of the general defalcation act, the defendant was entitled to introduce his set-off in reduction of the amount claimed on the mortgage: Somerset Colliery Co. v. John, 219 Pa. 380. But we did not hold that the set-off was to be allowed without regard to what might be shown as to the right of the appellee to claim it under the circumstances attending his repurchase of the property. The learned court, however, was of opinion on the second trial that he was entitled to his set-off and so instructed the jury in its charge and in its answer to the sixth point submitted by the defendant. This cannot be approved, for whether any claim that the appellee might have had for failure to comply with the stipulation for the erection of a plant was merged in what he was getting for $70,000, was manifestly a question for the jury. He procured an option to repurchase the property for $70,000, and in exercising the option agreed to pay that sum for it without the improvements upon it, which were to be made by Clark and Somerville or their successors. At no time until the deed was about to be de-

livered and the mortgage executed to secure the balance of the purchase money did he say anything about his claim under the supplemental agreement. In making the first payment of $10,000 he said nothing about the claim which he would now assert, and in agreeing to sell to him the appellant might fairly have understood that he was to pay the full $70,000 for what he was getting and that no counterclaim was to be made by him. If it or its predecessors had made improvements to the extent of $8,000, or any less sum, it, in all probability, would have added the sum so expended to the $70,000 asked for the property. Under the court's peremptory direction that his set-off be allowed he will get for $62,000 that for which he had agreed to pay $70,000.

If the testimony of the appellee, corroborated by another witness, is to be believed by a jury, he will be entitled to a set-off. He testified that on September 21, 1903, when he and the appellant met for the purpose of passing title and paying and securing the balance of the purchase money, he refused to execute the mortgage unless the $8,000 should be an off-set to it, and that it was agreed before he executed it that the said sum should be set off on the deferred payments. In this he is contradicted by Clark, who testified that, after the appellee had written a check to pay the balance of the cash due, he said, "Shall I take this $8,000 from this payment?" To this Clark replied, "No, sir, not from this payment or any other." There was testimony tending to corroborate Clark's recollection of what occurred.

The first and fourteenth assignments of error are sustained and the judgment is reversed with a venire facias de novo, that a jury may pass, as a question of fact, upon the right of the appellee to a set-off under the supplemental agreement of August 28, 1901.